UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 22-cr-205-1 (TJK) |
| v. | : | |
| | : | |
| BRIAN JONES, | : | |
| | : | |
| Defendant | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Brian Jones to 21 days of incarceration, 36 months of probation, 60 hours of community service, and $500 restitution.

**I.      Introduction**

Defendant Brian Jones, a 36-year-old production worker, and his codefendant, Patrick King,[1] participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[2]

Defendant Jones pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of 21 days of incarceration is appropriate in this case because: (1)

---

[1] Separately charged in this case, King is also scheduled to be sentenced on May 9, 2023.
[2] As of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

1

Jones entered the Capitol just eight minutes after the first breach of the building; (2) he walked past broken glass and other debris while a blaring alarm sounded to make his way inside; (3) he was undeterred when he witnessed his friend King push past Capitol Police officers to enter the building; and (4) he remained in the building for an extended period of time, more than half-an-hour.

The Court must also consider that Jones's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of Jones's crime support a sentence of 21 days of incarceration in this case.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 32 (Statement of Offense), at 1-4.

*Jones's Role in the January 6, 2021 Attack on the Capitol*

Brian Jones and Patrick King, two friends from the state of Washington, flew together to Washington D.C. on January 5, 2021, to attend then-President Trump's "Stop the Steal" Rally. After the rally, Jones and King marched to U.S. Capitol grounds. (**Figure 1**.) In the process, Jones and King were separated and Jones proceeded with the crowd, alone.



*Figure 1*: A "selfie" photograph Jones took of himself on his way to the Capitol from President Trump's rally.

At approximately 2:13 p.m., rioters first forced their way into the U.S. Capitol. The first rioter to enter the building jumped through a broken window next to the Senate Wing Doors. Jones walked through those doors and into the Capitol at 2:21 p.m.—only eight minutes after the first rioter had jumped through the adjacent window. (**Figure 2**.) Jones, apparently capturing video using his cellphone held overhead, walked past broken glass and other debris on his way inside the Capitol while ignoring the audible alarm from this exit-only fire door.



*Figure 2*: Screenshot from Interior Surveillance Camera Footage showing Jones entering the Senate Wing Doors at 2:21 p.m.

From there, Jones wandered through the Rotunda and Statuary Hall, making his way to the lobby area just inside the East Rotunda Doors. As a group of rioters flooded past Capitol Police officers who were trying to secure that entrance, Jones waited inside and watched for his friend, King. Jones was only feet away when he saw King and others push past two Capitol Police officers standing in the doorway who were doing everything in their power to obstruct the flow of rioters into the building. (**Figure 3**).



**Figure 3**: *Jones looks on as King and others bully their way past Capitol Police officers trying to secure the building.*

Reunited, the friends walked further into the building. Jones appears to congratulate King on his entry and the two seem to rejoice at their entry into the U.S. Capitol. **(Figure 4)**.



*Figure 4*: Reunited, Jones and King revel in their breach of the Capitol building.

Together, the two proceeded back into the Rotunda where they conversed, looked around, and King captured video using his cellphone. (**Figure 5**).



*Figure 5*: Jones and King in the Rotunda.

Jones, following King, left the Rotunda through the north doors and ventured further into the Capitol. Several minutes later, alone once again, Jones returned to the Rotunda and proceeded toward the exit at the East Rotunda Doors. **(Figure 6)**.



*Figure 6*: *Jones, alone, proceeding toward an exit.*

Jones, by himself, exited the building via the East Rotunda Doors at 2:52 p.m., more than 30 minutes after he first entered.

On the evening of January 6, Jones and King used Google to search for information about the criminality of entering the US Capitol. They searched for phrases including: "Is it illegal to go into the Capitol"; "US Capitol facial recognition"; "Unlawful entry charge"; "Law definition of breach"; "DC police release photos of people who broke into Capitol"; and others. (*See* Jones PSR, ECF 38, ¶ 21.)

*Social Media Posts*

After the attack on the Capitol, Jones used Facebook to discuss the events of January 6 with his friends. In multiple conversations, he minimized the conduct of January 6 rioters, saying that the events that day were a "set up by the police" and that rioters were let in:

| | |
|---|---|
| Jones: | Therea [*sic*] nothing wrong with taking a selfie in front of a monument |
| Facebook Friend MA: | Nope but better hope that's it. They're talking about conspiracy to commit insurrection charges. Just don't want to see you behind bars. |
| Jones: | It was a set up the police just let see everyone in and said to be respectful |

6

> Jones: Just let everyone in

Months later, on May 17, 2021, Jones still clung to, and professed, the view that rioters were "let in" to the Capitol building on January 6:

> Facebook Friend SK: Are people still being arrested?
> Jones: Yeah people still being arrested
> Jones: Guy from everett just got arrested
> Jones: Guy in the horns is still in jail I think
> Facebook Friend SK: Damn. Do you still have anxiety ? *crying laughing emoji* did the guy from Everett ruin anything?
> Jones: Not as bad on the anxiety
> Facebook Friend SK: Damn. That's crazy. Doesn't sound like he even really did anything, just in Trouble for being there, along with thousands of other people. So dumb.
> Jones: Yea after being let in *sad face emoji*

*Defendant's Statements*

Jones continued to minimize his conduct until the day of his arrest, when he surrendered at a local police station in Mount Vernon, Washington. While reviewing his arrest warrant there, Jones told FBI agents in an unsolicited statement that he and other rioters were invited into the Capitol and that they thought it was OK as long as they were respectful.

However, during an interview with the U.S. Probation department in anticipation of his Presentence Report in this case, Jones said that he regretted going into the Capitol on January 6 and that he felt ashamed to have been there. (ECF 38, ¶ 30). Jones also expressed regret during a post-plea interview with the U.S. Attorney's Office and the FBI, saying that he felt embarrassed at his participation.

*The Charges and Plea Agreement*

On March 15, 2022, the United States charged Jones by criminal complaint with: Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2); Violent Entry

and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). On March 23, 2022, Jones self-surrendered in the Western District of Washington. On June 6, 2022, the United States charged Jones by a four-count Information with violating 18 U.S.C. § 1752(a)(1) and (2), and 40 U.S.C. § 5104(e)(2)(D) and (G). On February 17, 2023, pursuant to a plea agreement, Jones pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

### III.   Statutory Penalties

Jones now faces sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, he faces up to six months of imprisonment and a fine of up to $5,000. Jones must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.   Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 21 days of incarceration, 36 months of probation, 60 hours of community service, and $500 restitution.

#### A.   The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds

8

of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Jones's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Jones, the absence of violent or destructive acts is not a mitigating factor. Had Jones engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Jones's case is the fact that he witnessed his codefendant King aggressively push his way past Capitol Police officers while entering the building, and then decided to remain inside afterwards. Jones also entered the Capitol within eight minutes of the first breach and walked past broken glass and other debris in doing so while ignoring a blaring alarm. Once inside, Jones stayed in the building for an extended period, spending more than 30 minutes inside.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B. The History and Characteristics of Jones

As set forth in the PSR, Jones has a significant, although non-violent, history of misdemeanor criminal conduct. In addition to one conviction Jones incurred as a minor, since he reached the age of majority, Jones has been convicted of: (1) Reckless Driving in 2005; (2) Possession of 40 Grams or Less of Marijuana in 2008; (3) Negligent Driving in 2012; (4) Restraining Order Violation in 2012; (5) another Restraining Order Violation in 2013; and (6) another Restraining Order Violation in 2013. (ECF 28, ¶¶ 32-38.)

In contrast with his codefendant King, however, Jones has expressed remorse for his conduct on January 6, including to the Probation office and in his interview with the FBI and U.S. Attorney's Office.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Jones's history as a repeat criminal offender shows he has difficulty obeying the law, and his conduct on January 6 and afterwards demonstrates a lack of respect for the rule of law. Though misdemeanors, his repeated offenses illustrate the need to deter future criminal conduct by this defendant, particularly in light of the fact that Jones received jail terms—one as high as 75 days—for some of these misdemeanors, but those did not deter him from criminal conduct on January 6.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This Court must sentence Jones based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Jones has pleaded guilty to Count Four of the Information, charging him with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012).

13

The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been


accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

*United States v. David Mish,* 21-CR-112 (CJN), provides an appropriate comparator case to this one. In that case, Judge Nichols sentenced Mish to 30 days of incarceration after the defendant pled guilty to a single count of violating 40 U.S.C. § 5104(e)(2)(G). Mish witnessed violence toward police officers in much the same way that Jones watched his friend King bully past Capitol Police officers. Mish also remained inside the building for 30 minutes, a close approximation to the duration of Jones's time in the Capitol. Mish also was in the first group of rioters to breach the doorway to the Speaker of the House's lobby and heard the shot that killed Ashli Babbitt.

Another appropriate comparison is *United States v. Chadwick Clifton*, 22-CR-182 (BAH). The defendant, who pled guilty to a single count of violating 40 U.S.C. § 5104(e)(2)(G), received from Judge Howell a sentence of 21 days incarceration. Clifton was in the front of a mob of rioters

and witnessed violence before entering the Capitol before going inside, much as Jones watched King push past police officers and then stayed inside. Like Jones, Clifton spent 30 minutes in the Capitol, where Jones spent more than half-an-hour inside.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.[4]

---

[4] Numerous judges of this Court have concluded that a sentencing court in a case involving a violation of a Class B misdemeanor under 40 U.S.C. § 5104 may impose a "split sentence" – a period of incarceration followed by a period of probation – for defendants convicted of federal petty offenses. See, e.g., 18 U.S.C. § 3561(a)(3); *see, e.g., United States v. Little*, 21-cr-315 (RCL), 2022 WL 768685, at *1 (D.D.C. Mar. 14, 2022) (concluding that "a split sentence is permissible under law and warranted by the circumstances of this case"); *see generally* Appellee's Brief for the United States, *United States v. Little*, No. 22-3018 (D.C.) (filed Aug. 29, 2022). Approximately nine judges of this district have authorized and imposed such split sentences pursuant to law. *But see United States v. Panayiotou*, No. 22-CR-55 (DLF), 2023 WL 417953 (D.D.C. Jan. 25, 2023) (holding that such sentences are impermissible under Section 3561(a)(3)).

In the alternative, courts have also issued sentences under 18 U.S.C. § 3563(b)(10), which authorizes limited periods of intermittent confinement as a condition of probation. The courts have consistently found that such a sentence is permissible for up to two weeks' imprisonment served in one continuous term. *See, e.g., United States v. Mize*, No. 97-40059, 1998 WL 160862, at *2 (D. Kan. Mar. 18, 1998) (quoting Section 3563(b)(10)'s legislative history in interpreting the term to mean a "brief period of confinement, e.g., for a week or two, during a work or school vacation,"

## V. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant Brian Jones to 21 days of incarceration, 36 months of probation, 60 hours of community service, and $500 restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Eric Boylan
    ERIC BOYLAN
    Assistant United States Attorney
    Texas Bar Number 24105519
    United States Attorney's Office
    610 D Street, N.W.
    Washington, D.C.  20001
    Telephone: (202) 815-8608
    Email: eric.boylan@usdoj.gov

---

described above and reversing magistrate's sentence that included 30-day period of confinement as a period condition of probation). To this end, at least four of the judges of this Court have imposed sentences under §3563(b)(10). Indeed, a sentencing court may also impose multiple intervals of imprisonment under §3563(b)(1). *See United States v. Anderson*, 787 F. Supp. 537, 539 (D. Md. 1992); *Panayiotou*, 2023 WL 417953, at *9 ("in a case in which the government exercises its prosecutorial discretion to allow a defendant to enter a plea to a single petty misdemeanor, it can request that a court impose a sentence of intermittent confinement as a condition of probation.") (citing 18 U.S.C. § 3563(b)).

In this district, at least two judges have similarly imposed multiple terms of imprisonment, to be served intermittently, consistent with this subsection. Such sentences are particularly appealing in light of the fact that it has been nearly three years since the World Health Organization first declared the COVID-19 outbreak a global pandemic in March 2020, and over two years since the first COVID-19 vaccine was administered in the United States in December 2020, allowing detention facilities to now more safely handle the logistical and practical concerns associated with multiple stints of imprisonment.